JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Darnel Henderson (Henderson) appeals from the judgment and sentence entered by the Eighth Judicial District Court, Cascade County, upon a jury verdict convicting him of the felony offenses of arson, burglary, criminal endangerment and tampering with physical evidence. We affirm.
¶2 Henderson raises two issues on appeal:
¶3 1. Did the District Court abuse its discretion in allowing a firefighter to testify as a lay witness regarding certain aspects of his investigation?
¶4 2. Were Henderson’s due process rights violated at sentencing?
FACTUAL AND PROCEDURAL BACKGROUND
¶5 The State of Montana charged Henderson with four felonies, alleging he unlawfully broke into an apartment, set fire to it, endangered building occupants and concealed cigarette lighters after arrest. Henderson pled not guilty, and the case proceeded to trial. Eleven witnesses, including firefighter Bobby Wiench, testified for the State, and three witnesses testified for the defense.
¶6 During Wiench’s testimony, defense counsel objected numerous times on grounds that Wiench was not qualified as an expert and, therefore, certain testimony lacked foundation. The District Court overruled the first such objection after the prosecutor explained the type of testimony anticipated in response to his question. After the second objection, the court allowed defense counsel to voir dire the witness and ultimately overruled the objection, determining Wiench could testify as a lay witness based on his experience as a firefighter. The court also overruled subsequent objections.
¶7 Ultimately, the jury convicted Henderson of all four felony offenses. At sentencing, the State offered sixty (60) years without parole. Previously, however, the State had offered fifty (50) years with twenty-five (25) years suspended. Henderson rejected this offer. The District Court sentenced Henderson to twenty (20) years for felony arson, twenty (20) years for felony burglary, and five (5) years for felony evidence tampering. These sentences were to run concurrently. The court also sentenced him to fifty (50) years for felony criminal *36 endangerment to run consecutively with the other three felony counts. The sentences were to be served at Montana State Prison (MSP). Henderson appeals. We set forth additional facts as necessary in the discussion below.
STANDARD OF REVIEW
¶8 We review rulings on the admissibility of evidence, including oral testimony, for an abuse of discretion. State v. Cesnik, 2005 MT 257, ¶ 12, 329 Mont. 63, ¶ 12, 122 P.3d 456, ¶ 12 (citations omitted).
DISCUSSION
¶9 Did the District Court abuse its discretion in allowing a firefighter to testify as a lay witness regarding certain aspects of his investigation?
¶10 Rules 701 and 702, M.R.Evid., address lay and expert testimony. Rule 701, M.R.Evid., provides:
[i]f the witness is not testifying as an expert, the witness’ testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness’ testimony or the determination of a fact in issue.
Rule 702, M.R.Evid., provides:
[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
Pursuant to § 46-16-201, MCA, Rules 701 and 702, M.R.Evid., apply in criminal cases as well as in civil cases.
¶11 Henderson asserts the District Court abused its discretion in admitting Wiench’s testimony regarding points of origin, pour patterns, the fire pattern, the lack of evidence of mechanical and electrical causes, the risk to building occupants and the possibility the fire could have blocked exits. He contends the admission of this testimony prejudiced him with respect to the arson, burglary and criminal endangerment convictions because the testimony was “the foundation of the State’s case” and was offered to establish the fire “was intentional and not an accident.” Henderson does not challenge his conviction of the offense of tampering with physical evidence; therefore, we do not address it.
¶12 Defense counsel did not request a continuing objection at trial, nor does Henderson assert on appeal that we should construe his *37 objections as continuing objections. We do not address an argument or issue when the appellant has failed to contemporaneously object or otherwise raise the issue at trial. State v. Todd, 2005 MT 108, ¶ 19, 327 Mont. 65, ¶ 19, 111 P.3d 677, ¶ 19 (citation omitted). Here, the unchallenged testimony includes Wiench’s definition of the term “point of origin” as “where the fire started,” his discussion of ruling out mechanical and electrical causes, and the following exchange regarding pour patterns:
Q: What exactly is the concept of a pour pattern?
A: It’s a pattern you look for where whatever substance has been poured will bum and will burn hotter than the rest of the area. So you’ll have an area that’s burned deeper than the other area. It hasn’t spread to the area-a piece of carpet, for example. Where the pour is, it’ll burn, but it won’t bum much past it if it’s caught fast enough to where the-the rest of the carpet.
Q: So that leaves a specific kind of burn damage, based upon the fires you’ve worked?
A: Yes, sir.
As stated, Henderson did not object to these portions of Wiench’s testimony and they remain unchallenged.
¶13 In addition, we note that Henderson’s counsel sought and received permission to voir dire Wiench in the presence of the jury during the State’s case. During voir dire, Wiench responded to defense counsel’s questions by--among other things-discussing how to find a point of origin of a fire, describing indications of arson, and discussing pour patterns. While we appreciate that counsel was attempting to challenge Wiench’s qualifications as an expert, the fact is that the State offered the testimony as lay testimony, and the court admitted it as such. If Henderson’s counsel believed that the testimony adduced during the voir dire was inadmissible as lay testimony, he should have asked the court to strike the testimony or moved for a limiting instruction. Rule 103, M.R.Evid. (Error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a timely objection or motion to strike appears of record.); see also State v. Long, 2005 MT 130, ¶ 25, 327 Mont. 238, ¶ 25, 113 P.3d 290, ¶ 25 (When a trial judge withdraws or strikes improper testimony from the record with an accompanying cautionary instruction to the jury, any error committed by its introduction is presumed cured.). In the case before us, Henderson’s counsel did neither. Nor did he register a continuing objection to much of the ensuing testimony which was premised in part upon Wiench’s voir dire *38 testimony. A party waives the right to contest evidence on appeal when that party’s actions elicited the evidence. State v. Smith, 2005 MT 18, ¶ 10, 325 Mont. 374, ¶ 10, 106 P.3d 553, ¶ 10.
¶14 As stated above, the District Court overruled Henderson’s objection when the prosecutor described the anticipated response to his question. On appeal, Henderson does not mention this ruling or Wiench’s response, which was that a battalion chief first told him about the possibility of arson. Thus, we decline to address Wiench’s testimony following the first objection.
¶15 Henderson next objected when the prosecutor asked Wiench if he believed one item in the living room was a point of origin. After defense counsel conducted voir dire, the trial court overruled the objection, reasoning Wiench “is and has been demonstrated here today to be an experienced, knowledgeable firefighter and is testifying within the scope of his observations and function.” While the record supports the District Court’s statement about Wiench’s training and experience, Wiench was not presented or qualified as an expert witness and, in fact, the State expressly stated it was not offering Wiench’s testimony as expert testimony.
¶16 The question remains, however, whether Wiench’s testimony following the ruling, as set forth below, was expert testimony or lay testimony:
Q: Mr. Wiench, as you worked through this scene, did there appear to be areas where the most concentrated burning had taken place? Based on what you personally saw?
A: Yes, sir. There’s three.
Q: And where were they located?
A: On the couch, in the living room, at the foot of the bed in the bedroom, and there was a spot in between the bed and the closet where it was burnt completely through the carpet, which was not a protected-none of the rest of the area around it was protected. And it had burned all the way through. And there was also the area between the bed and the dresser.
Q: And you personally saw that bed when you did your walk-through. Is that correct?
A: Yes, sir.
Q: And you personally saw the burn damage near the closet. Is that correct?
A: Yes, sir.
Q: Did you also see the burn damage that was actually on the *39 couch?
A: Yes, sir.
As stated above, Rule 701, M.R.Evid., provides, in part, that a lay witness may state opinions and inferences that are rationally based on his or her perceptions. In this exchange, Wiench testified based on his personal observations and inferences drawn therefrom that three areas of the apartment appeared more burned than others. Such testimony constitutes lay testimony pursuant to Rule 701, M.R.Evid. Thus, we conclude the District Court did not abuse its discretion in admitting the lay testimony that followed Henderson’s second expert testimony-related objection.
¶17 Henderson objected again following the prosecutor’s request that Wiench identify where in the residence he had seen anything that looked like a pour pattern to him. The District Court ruled Wiench could apply his “unobjected to testimony as to what a pour pattern is,” as set forth in ¶ 12 above, to “his observations at the scene.” The following exchange then occurred between the prosecutor and Wiench, beginning with a discussion of an unspecified photograph exhibit that is apparently State’s Exhibit 14:
Q: Could you please show me a photo that in your mind would be consistent with a pour pattern?
A: This pattern over right here.
Q: Okay. And what aspect of this photo would appear to be a pom-pattern to you?
A: You can see the-undemeath the couch where it has bmned deeper. But nothing on this side happened. It was dripped down. You can see where it had dripped down-whatever was pomed on it was dripped down underneath and started that underneath on fire.
Q: Were there other rooms in the house where you thought you might have seen a pour pattern?
A: The bedroom. There’s a better pictme of a pour pattern.
Q: Okay. And this is State’s Exhibit Number 8. Is that essentially a close up of the other item you showed us on the couch?
A: Yes, sir.
Q: Okay. Thank you. Let me show you another pictme here. This is State’s Exhibit Number 11. Can you tell me what’s depicted in this exhibit?
A: You can see where the-where the bedding is burnt away on two sides of the bed. But up in the-it would be the southeast comer of the bed, the way the bed is facing-how everything is *40 still-you can still see the blankets. So you know that the fire got hotter on this outside edge.
Q: When you explored this room during your walk-through, did it appear that that bed was more extensively burned than other items in the room?
A: Yes.
Q: Just based on looking at them with your own eyes?
A: Yes.
Q: Oh, I’m sorry. What did you say?
A: The floor.
Q: Did that appear to be a pour pattern as well?
A: Yes, sir.
Q: And which room was that located in?
A: That was in the bedroom.
Q: Okay. Can you please tell me where that was again? In relation to the closet?
A: It was right in front of the closet between the foot of the bed and the closet.
Q: And you’re saying you saw more extensive burning here than you did in the areas immediately next to it? Is that what you’re saying?
A: Yes, sir.
Q: And again, this is State’s Exhibit Number 9?
A: Yes.
¶18 Again, Wiench properly testified as a lay witness that he personally observed areas on or near the couch and bed that appeared more extensively burned than other areas. However, Wiench’s testimony also went beyond personal observations made at the scene, to his identifications of pour patterns in diagrams and photographs. ¶19 While we might well conclude in another case that identification of pour patterns by a firefighter crosses over into the realm of expert testimony, we do not so conclude under the circumstances presented here. As indicated above, Wiench had already testified without objection about pour patterns. ¶ 12. He then moved on to describe the areas of the apartment that appeared to him to be extensively burned. We have concluded that these statements were based upon personal observations. ¶ 18. The diagrams and photographs do no more than illustrate for the jury the areas of the apartment he observed, and to which he had already testified. Accordingly, and given Henderson’s failure to object to the testimony concerning pour patterns, we *41 conclude the court did not err in allowing Wiench to identify in the photographs and diagrams the pour patterns he had observed at the scene.
¶20 Finally, Henderson objected, on the basis of speculation, to testimony by Wiench that other tenants could have been endangered by this fire. The District Court overruled his objection and allowed Wiench to answer. Henderson makes passing reference to this ruling in one sentence in his Brief but presents no argument to support his contention that the District Comb’s ruling was erroneous, or that he was prejudiced thereby. Rule 23(a)(4), M.R.App.P., requires that an appellant present a concise, cohesive argument which “contain[s] the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on.” We have repeatedly held that we will not consider unsupported issues or arguments. In re Marriage of McMahon, 2002 MT 198, ¶ 6, 311 Mont. 175, ¶ 6, 53 P.3d 1266, ¶ 6. Therefore, we decline to consider this argument.
¶21 For the foregoing reasons, we conclude the District Court did not abuse its discretion in ruling upon the firefighter’s testimony.
¶22 Were Henderson’s due process rights violated at sentencing?
¶23 Henderson presents no argument that the District Court’s sentence was illegal. He argues exclusively that the State vindictively recommended a higher sentence at the sentencing hearing than it had offered previously. However, the record contains no documentation of the State’s earlier offer. We cannot render a decision based exclusively on Henderson’s unsupported allegations. Absent evidence corroborating his allegations or supporting his argument, we cannot address the merits of his claim. Rule 9(a), M.R.App.P., requires that a party seeking review of a judgment, order, or proceeding must present a record sufficient to enable us to rule on the issues raised. Henderson has failed to do so.
CONCLUSION
¶24 For the foregoing reasons, we affirm.
JUSTICES RICE, NELSON and MORRIS concur.