No. 85-473

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

THE STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

DONALD CHARLES WATTS, JR.,

        Defendant and Appellant.

_____

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Cannon & Sheehy; Edmund F. Sheehy, Jr., Helena,
        Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Barbara Claassen, Asst. Atty. General, Helena
        Mike McGrath, County Attorney, Helena, Montana
        Carolyn Clemens, Deputy County Attorney, Helena

_____

Submitted on Briefs: Feb. 20, 1986

Decided: April 17, 1986

Filed: APR 17 1986

_Ethel M. Harrison_
_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Charles Watts, Jr. appeals the order of the District Court of the First Judicial District revoking Watts' previously suspended sentence arising from an earlier guilty plea to the felony offense of sexual intercourse without consent.

Affirmed.

The issues we are called upon to decide are:

1. Whether defendant's constitutional rights under Art. II, § 24 of the Montana Constitution were violated when the State, after filing charges of aggravated kidnapping and assault, elected to dismiss those charges and proceed on a revocation of parole of defendant's suspended sentence.

2. Whether the District Court arbitrarily and capriciously concluded that defendant's suspended sentence should be revoked.

In August 1981, Watts pled guilty to felony sexual intercourse without consent and was sentenced to 20 years in Montana State Prison with ten years suspended. One condition for the suspension was that Watts remain a law-abiding citizen during the term of his sentence. On April 26, 1985, Watts was charged with aggravated kidnapping and misdemeanor assault. These charges stemmed from the incidents of the evening of March 22, 1985 and the early morning of March 23, 1985. On that night, Watts was alleged to have intimidated Robert McClelland, by holding him against his will in Watts' automobile, and beating him with his fists.

On May 23, 1985, the State petitioned the District Court to revoke Watts' suspended sentence. At the June 6, 1985

hearing on the revocation petition, Watts moved to dismiss the petition for the reason that his rights under Art. II, §§ 24 and 26 of the Montana Constitution were violated. Those sections guarantee respectively the rights of the accused in criminal proceedings and the right to trial by jury. Watts contended to the District Court, and now contends to this Court, that because the State had filed an information against him, criminal proceedings against him had been initiated. Once instituted, these criminal proceedings give rise to the rights under Art. II, §§ 24 and 26. The State should not be allowed to circumvent these constitutional guarantees, argues Watts, by filing a petition to revoke his suspended sentence. The District Court rejected Watts' argument and refused to dismiss the petition. On August 13, 1985 that court revoked the suspension of the last ten years of Watts' sentence for sexual intercourse without consent. The State later dropped the kidnapping and assault charges pending against Watts.

We reject Watts' claims that his Montana constitutional right to jury trial and his rights as an accused have been violated. Watts would have us combine into one action two completely separate proceedings against him. Certainly the State, by filing an information charging kidnapping and assault, instituted criminal proceedings against him. However, the action to revoke his previously suspended sentence is not a criminal adjudication. State v. Robinson (Mont. 1980), 619 P.2d 813, 37 St.Rep. 1830; State v. Oppelt (1979), 184 Mont. 48, 601 P.2d 394. A defendant given a suspended sentence lives knowing that "a fixed sentence for a definite term hangs over him." Roberts v. United States (1943), 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41; Oppelt, 184

Mont. 48, 601 P.2d 394. Suspension of sentence is a discretionary act of grace by a district court. Section 46-18-201, MCA; Oppelt, 184 Mont. 48, 601 P.2d 394. In contrast to the proof required to convict Watts on the information charged, in order to revoke his suspended sentence the State need only show Watts failed to live up to the requirement that he remain law-abiding. That requirement conditioned the suspension of a portion of a sentence, which had been imposed only after Watts had been tried, and convicted, with all the rights secured to him by our constitution attaining in the proceeding.

Watts essentially argues that the State, in order to punish him for the alleged new offenses of kidnapping and assault, chose to proceed through the revocation hearing instead of through full trial. This argument fails to take into account that as a convicted felon, his liberty was already conditioned by the requirements of the original sentencing court. Watts' argument that the State punished him without trial for a new offense by imposing a sentence which already had been pronounced against him, equates a suspended sentence with no sentence at all.

Clearly the District Court can revoke the suspension of a sentence, without that revocation constituting punishment for a new offense. Oppelt, 184 Mont. 48, 601 P.2d 394. Rather, revocation of a suspended sentence indicates a determination by the court that the purposes of rehabilitation are not being served by the suspension. Oppelt, 184 Mont. 48, 601 P.2d 394; State v. Robinson (Mont. 1980), 619 P.2d 813, 37 St.Rep. 1830. The fact that the later charges were dropped after the revocation decision does not affect the character of the revocation hearing. In State

v. Ryan (1975), 166 Mont. 419, 533 P.2d 1076, we noted the difference between a revocation hearing and a criminal trial stemming from the same conduct. The revocation hearing focuses on whether terms conditioning the suspended sentence have been violated. Trial focuses on violation of statutes pertaining to the new charges. Ryan, 166 Mont. at 1079. Watts' constitutional rights were not violated by the revocation of his suspended sentence.

Finally, Watts contends the District Court abused its discretion in finding that he had violated the condition that he remain law-abiding. In Robinson we noted, "[t]he inquiry at any probation revocation hearing is whether the purposes of rehabilitation are being achieved, and whether by virtue of . . . evidence that the defendant's behavior was not in compliance with the rules and objectives of [defendant's] probation, the purposes of probation are best served by continued liberty or by incarceration." State v. Robinson (Mont. 1980), 619 P.2d 813, 815, 37 St.Rep. 1830, 1833. Furthermore, "[a]ll that is required is that the facts before him be such that the judge is reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty. Robinson, 619 P.2d at 815.

The evidence presented at the revocation hearing included testimony by two witnesses that Watts had beaten McClelland and had held the terrified McClelland in a car owned and driven by Watts. Watts admitted that his car displayed expired and fictitious license plates. Testimony indicated Watts had accepted money from McClelland as the purchase price for marijuana Watts was to procure.

Certainly this evidence is sufficient for the Court to find Watts had not remained law-abiding.

The order of the District Court revoking Watts' suspended sentence is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices